UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SENECA SPECIAL INSURANCE CO.,**<br><br>Plaintiff,<br><br>vs.<br><br>**ID VENTURES, LLC and ID JOY, LLC,**<br><br>Defendants. | 2:22-CV-11599-TGB-JJCG<br>HON. TERRENCE G. BERG<br><br><br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br>**(ECF NO. 6)** |

This case involves a dispute between the former owners of two apartment buildings in Detroit and an insurer. Shortly after the owners agreed to sell the buildings to a third party, they purchased an insurance policy on the property. But before the sale closed, a fire damaged one of the buildings. The owners offered a $75,000 discount on the agreed-upon sale price, and the sale went forward despite the fire. The former owner submitted a claim under the policy. The insurer paid an amount equaling the insured's mitigation expenses, plus $75,000, less the policy deductible. The insurer maintains that $75,000 is an accurate measure of the insured's loss because it represents the decrease in the properties' fair market value that both the buyer and the seller agreed was correct. The insurer also argues that the former owners' sale of the property "as is" may have extinguished their insurable interest in the property, and

1

that the former owners recouped any loss they suffered beyond $75,000 when the buildings sold for their full market value less $75,000.

The former owners insist that all of these disputes must be resolved by a panel of appraisers, while the insurer contends that these are legal questions that this Court should resolve. For the reasons explained below, this Court will resolve the parties' contractual interpretation dispute. If any additional recovery is possible after that determination, the matter will be submitted to the appraisers, who will determine the precise amount of loss. Because there is a sufficiently immediate and definite issue for legal resolution, Defendants' Motion to Dismiss on the basis of ripeness will be denied.

## I. BACKGROUND

### a. The property at issue

Defendants ID Ventures, LLC, and ID Joy, LLC (collectively "Defendants" or "the ID Entities"), owned two identical apartment buildings on Joy Road in Detroit, Michigan. ECF No. 1, PageID.4. The ID Entities insured both buildings under a policy issued on April 16, 2021 by Plaintiff Seneca Specialty Insurance Company. *Id.*

On March 13, 2021, about a month before they purchased the insurance policy, the ID Entities signed an agreement to sell the two buildings to a third party for $1,541,000. *Id.* The agreement allowed the buyer to terminate the deal if fire damaged or destroyed the buildings before closing and the cost to repair them exceeded $500,000. *Id.* at

PageID.4-5; Purchase Agreement, ECF No. 1-2, PageID.101. If the buyer chose to proceed despite any fire damage, the buyer would be entitled to an assignment of the ID Entities' interest in any proceeds of any insurance policy on the property. *Id.*

In June, 2021, after the purchase agreement was signed but before the sale closed, a fire damaged one of the apartment buildings. ECF No. 1, PageID.5. According to Seneca, the ID Entities did not repair the fire-damaged building "beyond minimal water extraction and mitigation," which cost the ID Entities $15,783.96. Pl's. Resp., ECF No. 8, PageID.202.

Rather than terminate the agreement, the buyer decided to buy the buildings on an "as is" basis, and negotiated a $75,000 discount to the sale price. ECF No. 1, PageID.5 In July, the sale closed, and the ID Entities were paid $1,541,000 less a $75,000 discount. Closing Statement, ECF No. 1-3, PageID.114.[1] There was never any assignment of insurance proceeds from the ID Entities to the purchaser.

**b. The parties' insurance agreement**

Several policy terms are relevant here. First, the policy insured the buildings on an "Actual Cash Value" basis only. Policy, ECF No. 1-1, PageID.24, 54. Second, the policy set out a number of conditions that

---

[1] Though the $75,000 figure is recorded on the closing statement as "Fee to Jason Dean," all parties accept that it represented the discount for the fire damage.

3

would apply to any claim, including that Seneca would not "pay for more than [the insured's] financial interest in the Covered Property" or pay for a loss made good by others—one for which the ID Entities were already reimbursed from some other source. *Id.* at PageID.27, 53. Third, the policy included a clause requiring the parties to submit any disputes about "the value of the property" or the "amount of loss" to a panel of appraisers for resolution. *Id.* at PageID.83. Michigan law requires that every fire insurance policy include such an "appraisal" clause. M.C.L. § 500.2833(1)(m).

### c. The claim timeline

In mid-July, 2022, Seneca issued a check to the ID Entities for $65,783.96. That amount represented $15,783.96 for the ID Entities' expenses for debris removal and mitigation, plus $75,000 "representing the value of the fire damage as agreed to by the ID Entities and their purchaser at the time of closing," minus the policy's $25,000 deductible. Seneca then filed this case seeking a declaratory judgment that:

> (1) Defendants' loss is limited to the $75,000.00 Defendants themselves determined after the fire to be the [cash value] of the subject property caused by the fire; and (2) that the amounts paid to the ID Entities by Seneca fully satisfy Seneca's contractual obligations and Seneca owes no further sums under its contract.

ECF No. 8, PageID.205. Two weeks after this case was filed, the ID Entities demanded appraisal in a letter to Seneca.

4

## II. STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction generally comes in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject matter jurisdiction alleged in the complaint questions only the sufficiency of the pleading. *Id.* When reviewing a facial attack, the court takes the allegations in the complaint as true. *Id.* At all times, the plaintiff has the burden of proving jurisdiction to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A factual attack, on the other hand, is not a challenge to the sufficiency of the allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *see also* 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

5

### III. ANALYSIS

The ID Entities move for dismissal under Fed. R. Civ. P. 12(b)(1), and characterize their motion as a factual attack. The Court held oral argument on February 21, 2023. The ID Entities argue that the Court lacks subject matter jurisdiction because this controversy is not ripe.

Article III, Section 2 of the Constitution extends the judicial power of the United States "only to 'Cases' and 'Controversies.'" *Spokeo, Inc. Tv. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. Art. III, § 2). The ripeness doctrine is part of the Article III justiciability inquiry. Ripeness, which concerns whether the timing of a suit is appropriate, is intended to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580 (1985)).

Seneca seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" § 2201(a). The statute's "case of actual controversy" requirement is coextensive with the constitutional limits set by Article III, and thus incorporates the Article III standing and ripeness inquiries. *Fieger v. Michigan Supreme Ct.*, 553 F.3d 955, 961 (6th Cir. 2009); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-127 (2007).

6

In this context, the standing inquiry asks whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quotation marks omitted). The ripeness doctrine, which "bears close affinity" to standing but is not "identical," instructs the Court to make a prudential determination that the exercise of jurisdiction is appropriate. *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 567 (6th Cir. 1995). The court must consider (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the dispute on the merits; and (3) the hardship to the parties if judicial review is denied at this stage of litigation. *Id.* at 568.

The ID Entities argue that there is no justiciable controversy between the parties because Seneca has admitted liability for at least some of the claimed damage. Def's. Mot. to Dism., ECF No. 6, PageID.149-50. Accordingly, the ID Entities say, there is no need for judicial intervention at all because the only dispute between the parties concerns the "amount of loss," an issue the parties agreed would be resolved by a panel of appraisers. Seneca responds that outstanding legal

7

questions of coverage—that is, whether the policy is applicable at all— preclude appraisal, and require judicial resolution.

For the reasons explained below, while there is no question of "coverage" in the strictest sense, as Seneca has admitted the fire is covered under the policy, there is an existing legal dispute as to the meaning of one or more policy terms and the availability, as a matter of law, of any recovery beyond what Seneca has already paid. That dispute is ripe. Once it is resolved by the Court, the case will proceed to the appraisal process if there are any additional damages left to appraise.

### a. The appraisal process under Michigan law

Appraisal is a statutorily created process intended to resolve disputes between insurer and insured about the cash value or amount of a covered loss quickly and inexpensively. Section 500.2833(1)(m) of the Michigan Compiled Laws requires that every contract for fire insurance in Michigan include a term providing that "if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal." *Id.* "Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 487 (1991). But once an insurer admits that a loss is covered under its policy and all that remains is a determination of loss, "a court is statutorily mandated to order the parties to participate

8

in Michigan's statutory appraisal process." *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 578 (6th Cir. 2016). *Kwaiser*—the leading Michigan case on this issue—leaves open to interpretation what is a "coverage" issue for the court, and what is an issue of amount of loss, for the appraisers.

While appraisers are charged with answering certain disputed questions, they are neither required nor even permitted to resolve *every* dispute that might arise between an insurer and insured. Courts in this district have read *Kwaiser* as allowing appraisers to answer certain factual questions after a court has resolved any outstanding legal questions of coverage. *See, e.g., Smith v. State Farm Fire and Cas. Co*, 737 F. Supp. 2d 702, 710-711 (E.D. Mich. 2010) ("Where the insurer has already conceded coverage for the loss . . . deciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers[.]"); *Cox v. State Farm Fire & Cas. Co.*, 2020 WL 1888824, at *7 (E.D. Mich. Apr. 16, 2020) ("Thus, courts make legal determinations as to the categories of coverage; appraisers make factual findings as to whether specific damage fits into those categories or not."). And in the most recent Sixth Circuit case to address the issue, the Court of Appeals cited *Kwaiser* for the proposition that "in Michigan appraisers resolve (at least in the first instance) any *factual* disputes about the amount of an insured's loss." *Scottsdale Ins. Co. v. Altman Mgmt. Co.*, 832 F. App'x 998, 999 (6th Cir. 2021) (emphasis added).

In sum, while appraisers resolve factual disputes regarding the amount of an insured's loss or answer other loss questions that require factual conclusions—such as whether particular damage was caused by a covered event or some other cause, the extent of damage, or the cost to repair that damage—they may not answer legal questions of what the policy does or does not cover. This makes good sense: appraisers, typically insurance adjusters or others with specialized knowledge, are expert in making these sorts of factual determinations; courts are not.

But the ID Entities argue that "the general rule in *Kwaiser* does not apply when the insurer admits liability to at least part of the alleged property damage." ECF No. 6, PageID.149. For that proposition, the ID Entities rely on *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 578 (6th Cir. 2016), in which the Sixth Circuit explained that once an insurer has admitted that a loss is covered under its policy, a court must order the parties to participate in the appraisal process. *Id.*

The ID Entities' all-or-nothing interpretation of *Kwaiser* and *D Boys* goes too far. Even where an insurer admits that a loss resulted from a covered cause, it may still raise other legal defenses to coverage. *See, e.g., Haddock v. State Farm Fire & Cas. Co.*, --- F. Supp. ---, 2022 WL 16625964, at *11 (E.D. Mich. Nov. 1, 2022); *Leadbetter, v. State Farm Fire and Casualty Company*, 2022 WL 413912, at *3 (Mich. Ct. App. Feb. 10, 2022) (explaining that whether a condition precedent required to enforce a certain policy provision has been met is a matter of coverage to

10

be determined by a court) (citing *Dupree v. Auto-Owners Ins. Co.*, 497 Mich. 1, 6 (2014)).

Even though virtually every insurance dispute is, at bottom, a dispute about how much an insurer must pay its insured, appraisers do not decide each and every disputed question whenever there is disagreement about the ultimate sum due on an insurance policy. An insurer who concedes that an insured property was damaged by a covered cause is still entitled to raise other legal defenses that would negate coverage and seek to have those issues resolved by a court. An insurer might argue, for example, that an insured failed to comply with its own obligations to pay premiums under the policy or lied when applying for the policy. Further, disputes about the legal interpretation of policy language are to be interpreted by a court, not by an appraiser. *Allied Mech. Servs., Inc. v. Nat'l Fire & Marine Ins. Co.*, 259 F. Supp. 3d 725, 729 (W.D. Mich. 2017). Just as appraisers resolve factual questions within their expertise, courts resolve legal questions of policy interpretation.

**b. Application to this case**

At the hearing, counsel for the ID Entities framed this dispute as encompassing two questions. The ID Entities maintain that the policy language allows them to recover the full diminution in value caused by the fire, even if they later recovered the full value of the building by selling it to a third party. Responding to the Court's question about

> **Commented [TB1]:** FWIW, these really are factual questions, right, but if resolved a certain way they create a legal defense to the obligation to pay.
>
> **Commented [LW2R1]:**

11

whether that would amount to double recovery or a windfall, counsel conceded that it might, but argued that the policy specifically allows such a windfall. Counsel argued that Seneca could have foreclosed such double recovery in the policy agreement, but chose not to. Seneca, for its part, argued that it did just that when it included a clause providing that Seneca would not pay for "a loss made good by others." So the first question in this case is one of policy interpretation: which side reads the policy correctly? Both counsel agreed that there are no disputed facts bearing on that question.

The second question—how badly the fire damaged the building and what that damage is worth—will only be reached if the ID Entities prevail on the first question. Answering question two would require inspection of the building, consultation with mitigation experts, analyzing the market value of the building, and making other factual determinations about the amount of loss. Counsel for the ID Entities explained that adjusters for both parties have inspected the building and taken positions about the loss that are on the order of several hundred thousand dollars apart.

But the court need not decide either question one or question two to resolve this motion. Instead, this motion asks *who decides* the first and second questions identified above. By framing these issues with clarity, the result of this motion likewise becomes clear. Question one is plainly a legal question of contract interpretation involving no disputed facts.

12

Question two, by contrast, turns entirely on issues of fact within the appraisers' expertise and falls squarely within the appraisal statute.

This Court must resolve any outstanding legal questions before the parties' dispute is submitted to appraisal. As another court applying Michigan law has explained, interpreting a disputed policy term may not always be a "coverage" issue in the strictest sense of the word, but it still involves answering a legal question about the meaning of the policy—and is a function that the court should undertake before ordering appraisal. *Allied Mech. Servs., Inc*, 259 F. Supp. 3d at 729. At the hearing, both parties agreed that there are no factual disputes that would preclude judicial resolution of the threshold question of whether the sort of recovery the ID Entities seek is foreclosed by the policy. Answering that question will require a legal interpretation of the policy and any disputed terms. That is a task for the Court, not the appraisers.

If the Court determines that the ID Entities' interpretation is correct, the matter will be submitted to appraisal. The appraisers will then perform their proper role: they will determine the precise amount of loss the building suffered as the result of fire.

### c. The issues presented in this case are ripe for decision

For all the reasons discussed above, the parties' dispute is sufficiently definite and immediate to satisfy Article III's case-or-controversy requirement. For similar reasons, Seneca's complaint is also ripe. To determine whether an issue is ripe for determination, the court

13

must consider (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the dispute on the merits; and (3) the hardship to the parties if judicial review is denied at this stage of litigation. *Adult Video Ass'n,* 71 F.3d at 567.

First, Seneca has shown that the harm it complains of may come to pass. This is because if the case were to be submitted to appraisal before certain policy terms were clearly interpreted, Seneca could be required to pay in a manner that is inconsistent with the correct interpretation of the policy.[2] Seneca has also shown that the factual record is sufficiently developed, as the relevant insurance agreement, communications between the parties, and contract for sale of the property at issue are all before the Court. Finally, the Court must consider what harm would stem from denying judicial review at this stage. Were the Court to decline jurisdiction, this case would proceed to appraisal without judicial interpretation of key policy terms, and the appraisers would find themselves enveloped in questions of contract interpretation considered

---

[2] The ID Entities find support in *Travelers Indem. Co. v. Boyne USA, Inc.*, 2019 WL 5682803, at *2 (W.D. Mich. Apr. 23, 2019). That case appears to be the only one in which a court applying Michigan law has concluded that it lacked subject matter jurisdiction over a similar dispute on ripeness grounds. But that opinion was rendered on a different procedural posture (a motion for a temporary restraining order), was issued without briefing on the question of the court's subject matter jurisdiction, and was later vacated on a motion for reconsideration. *Travelers*, 2020 WL 11272885, at *1 (W.D. Mich. Feb. 21, 2020)

to be beyond their ken. That could lead to an erroneous appraisal award, review of which would engender further costly litigation. Accordingly, all three factors outlined by *Adult Video Ass'n* are met, and this case is ripe for decision.

Though the issue is ripe, it has not yet been fully briefed by the parties. This is because the ID Entities took the position that where an insurer admits liability for a loss, *Kwaiser* is inapplicable and appraisal must be ordered. Defendants assumed the Court would accept that argument, and thus neglected to brief the question of how they believe the policy should be interpreted. The Court will therefore order the parties to brief that issue so this case may be expeditiously resolved.

## IV. CONCLUSION

For the reasons explained above, **IT IS HEREBY ORDERED** that Defendants' pending Motion to Dismiss is **DENIED**.

Because the parties have agreed that there are no outstanding factual questions, both sides shall submit, no more than thirty (30) days after the day that this Order is entered, cross-motions for summary judgment addressing the legal questions of policy interpretation set out above, not to exceed 15 pages in length. Depending on how those questions are resolved, this matter may then be submitted to appraisal. Responses and replies to those motions may be made in accordance with the ordinary time limits set by the Federal Rules of Civil Procedure and

> **Commented [TB3]:** Hasn't P already identified the issue—the meaning of the ACV term? Or other terms? Seems like we are kicking the can down the road too much. Is there any way we can give the guidance here and send them to appraisal? That's what the Ds want and we know we are not going to conclude "no appraisal."

15

Local Rules of the Eastern District of Michigan. Responses shall be limited to 15 pages in length, and replies limited to 7 pages.

**IT IS SO ORDERED.**

Dated: March 23, 2023   s/Terrence G. Berg
                        TERRENCE G. BERG
                        UNITED STATES DISTRICT JUDGE